IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

TOLIVER V. TOLIVER

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

CAROLYNE R. TOLIVER, APPELLEE,

V.

PAUL G. TOLIVER, APPELLANT.

Filed February 9, 2021.    No. A-20-415.

Appeal from the District Court for Douglas County: JAMES T. GLEASON, Judge. Reversed and remanded with directions.

Paul G. Tolliver, pro se.

Carolyne R. Tolliver, pro se.

PIRTLE, Chief Judge, and MOORE and ARTERBURN, Judges.

PIRTLE, Chief Judge.

INTRODUCTION

Paul G. Toliver appeals from an order of the district court for Douglas County finding that Carolyne R. Toliver had shown cause why she should not be held in contempt for failing to comply with a provision of the decree of dissolution of the parties' marriage. Based on the reasons that follow, we reverse and remand with directions.

BACKGROUND

Paul filed an application for an order requiring Carolyne to show cause why she should not be held in contempt for failing to comply with a provision of the parties' divorce decree. He asserted that she did not follow the method set forth in the decree to determine the equity in the parties' house. The court issued the order to show cause.

- 1 -

A hearing was held on the matter and both parties appeared without lawyers. Evidence established that the decree awarded the parties' house to Carolyne and ordered her to refinance the mortgage on the house within a certain period of time. After the house was refinanced, each party was to receive 50 percent of the equity in the house. The equity in the house was to be determined by using the appraised value of the home at the time of refinancing and subtracting the parties' outstanding mortgage loan balance. The appraised value at the time of refinance was $200,000 and the loan balance was $135,951.10.

Carolyne refinanced the house at 80 percent of the appraised value and then paid off the parties' mortgage. Rather than using the appraised value of the house to determine the total equity amount, she used 80 percent of the appraised value. She also deducted her refinance closing costs from the equity amount. When the parties' mortgage loan balance was paid off, there was $17,671.55 in net equity remaining to be split evenly. Paul received a cashier's check for $8,836.05. Carolyne acknowledged that the decree stated equity would be calculated based on the appraised value less the mortgage loan balance, i.e., gross equity.

At the end of the hearing the trial court stated that it would take the matter under advisement, indicating that it appeared Carolyne did not correctly calculate the equity owed to Paul based on the decree and that she would likely be found in contempt. However, when the court entered its order, it found without explanation that Carolyne had shown cause why she should not be held in contempt and overruled Paul's motion for contempt.

## ASSIGNMENTS OF ERROR

Paul does not specifically assign errors in accordance with Nebraska's rules of appellate procedure. However, an appellate court may, at its option, notice plain error. See *United States Cold Storage v. City of La Vista*, 285 Neb. 579, 831 N.W.2d 23 (2013).

## STANDARD OF REVIEW

Plain error is error plainly evident from the record and of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Harrison v. Harrison*, 28 Neb. App. 837, 949 N.W.2d 369 (2020).

## ANALYSIS

Paul's pro se brief does not comply with Neb. Ct. R. App. P. § 2-109(D)(1) (rev. 2008), which sets forth with specificity the nine sections required in an appellant's brief and the order in which they must appear. Among other issues, Paul's brief does not comply with § 2-109(D)(1)(e), which requires:

> A separate, concise statement of each error a party contends was made by the trial court, together with the issues pertaining to the assignments of error. Each assignment of error shall be separately numbered and paragraphed, bearing in mind that consideration of the case will be limited to errors assigned and discussed. The court may, at its option, notice a plain error not assigned.

Paul's brief sets forth a separate section for his assignments of error but his allegations do not state what errors were made by the trial court. Further, he does not argue all of his "assignments of

error" in his brief. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Diamond v. State*, 302 Neb. 892, 926 N.W.2d 71 (2019).

In situations where a brief fails to comply with § 2-109(D)(1), the court may consider the case as one in which no brief was filed, or, alternatively, the court may examine the proceedings for plain error. See *In re Interest of Jamyia M.*, 281 Neb. 964, 800 N.W.2d 259 (2011). We elect to review the record for plain error, and, upon review, we find plain error is present for the reasons set forth below.

Paul brought the contempt action alleging that Carolyne failed to comply with the provision of the decree related to splitting the equity in the parties' house. The decree specified that Carolyne owed Paul 50 percent of the equity determined by the appraised value of the property at the time of refinancing less the parties' mortgage balance. Instead, Carolyne determined equity based on 80 percent of the appraised value less the parties' mortgage balance. She also deducted her closing costs on her new loan out of the parties' equity, which was contrary to the provision in the decree. As the court noted, the fact that Carolyne only refinanced for 80 percent of the appraised value did not affect how equity was to be calculated.

The appraisal value was $200,000 and the mortgage balance was $135,951.10. The difference between these two amounts is $64,048.90, the amount of equity in the house based on the decree. Paul's share of the equity should be $32,024.45. Paul only received $8,836.05.

We conclude that the court erred in finding Carolyne had shown cause why she should not be held in contempt and, therefore, erred in overruling Paul's motion for contempt. The evidence showed that Carolyne did not give Paul the amount of equity he was entitled to under the decree. She inappropriately used 80 percent of the appraisal value, rather than the full appraisal value, and deducted her closing costs from the equity to be split between the parties. Therefore, we reverse the trial court's order overruling Paul's motion for contempt and remand to the trial court with directions to find Carolyne in contempt and to determine the appropriate sanction and purge plan.

## CONCLUSION

For the reasons stated above, we reverse the district court's order overruling Paul's motion for contempt and remand the issue to the district court with directions to find Carolyne in contempt, to determine the appropriate sanction to be imposed for Carolyne's contempt, and to determine an appropriate purge plan.

REVERSED AND REMANDED WITH DIRECTIONS.